**STATE ex DAYTON POWER & LIGHT
CO v LUTZ et**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1059.   Decided Feb 4, 1933

Matthews & Matthews, Dayton, for plaintiff.

Calvin Crawford, Prosecuting Attorney, Dayton, and Edward Duncan, Ass't Prosecuting Attorney, Dayton, for defendant.

132

**BY THE COURT**

We are somewhat in doubt if the first three demurrers properly raise such legal propositions as are contemplated by demurrers. The demurrer to the fourth defense clearly does. However, there is but one question in this case which counsel have recognized from the beginning of the proceedings and which the court will undertake to determine.

So far as we have been able to learn from the somewhat extensive briefs of counsel and upon our own independent investigation there have been no adjudications on the specific question involved under the statutes applicable. We, therefore, must resort to general principles of the law of contracts as applied to municipal corporations.

At the outset it may be said that there is no dispute but that the proceedings of the township trustees in the district involved in this suit as required by the sections of the statute applicable, §§3428 to 3440-1, GC, were valid in all particulars and that the plaintiff having observed all statutory requirements was entitled to and did receive a contract covering the lighting of the lands and lots· in the district for a period of ten years, and further that in pursuance of the terms of the contract and the obligations enjoined upon the plaintiff it did perform that which it was to do, namely, provide light, per specifications, to the lands and lots to be lighted under the

contract. It is also admitted that the trustees recognized their obligation under the statutes involved and certified to the defendant the assessments which under the statutes should have been placed against the lots and lands involved.

Likewise the proceedings incident to the annexation of most of the territory involved in the petition are regular and legal and for a considerable period of the time when the lighting was provided to the lands and lots in the districts involved they were a part of the City of Dayton and the owners thereof paid the regular tax rate as fixed in the City of Dayton.

It is claimed that these facts together with the fact that the plaintiff must have been put on notice as to the annexation proceedings is a defense to the averments of the petition.

We do not believe the contract made and entered with sanction of law can be so avoided. The obligation incurred by the proceedings was in the first instance due from the trustees to the plaintiff. It was a debt. It is not necessary to say whether or not the whole amount was a debt but it is certain that the amount which was certified to the County Auditor was in any test a debt. There arises a nice question whether or not some action should not have been taken by the duly constituted authority under §3557-1 GC to apportion this indebtedness as between the townships and the municipal corporation.

But as this was not done, we have the contract without any assumption whatever of its obligations by the city. If the situation presented related to individuals, legal construction would require that primarily the trustees would be liable to the plaintiff. If the city assumed the indebtedness it would also be liable, but that ·would not relieve the trustees from their obligation. We do not say that this would be the controlling rule in the instant case because it is governed by statute, but we are satisfied that the obligation having been incurred by virtue of the statutes it can not be avoided by annexation proceedings alone.

In the case of Commissioners of Laramie County v Commissioners of Albany County et, 92 U. S., 307, the court held in the second syllabus:

"Where the legislature of Wyoming territory organized two new counties and included within their limits a part of the territory of an existing county, but made no provisions for apportioning debts or liabilities, held that the old county, being

solely responsible for the debts and liabilities it had previously incurred, had, on discharging them, no claim upon the new counties for contribution."

The court at page 315 said:

"Regulation upon the subject (the division of property into towns) may be prescribed by the legislature; but, if they omit to make any provision in that regard, the presumption must be that they did not consider that any legislation in the particular case was necessary. Where the legislature does not prescribe any such regulations, the rule is that the old corporation owns all the public property within her new limits, and is responsible for all debts contracted by her before the act of separation was passed. Old debts she must pay, without any claim for contribution, and the new subdivision has no claim to any portion of the public property except what falls within her boundaries, and to all that the old corporation has no claim."

In Board of Education, Borough of Flemington v State Board of Education et, (N. J.) 81 At., 163, it is said in the third syllabus:

"Where the legislature creates a new municipal corporation embracing part of the territory of the existing municipal corporation it may impose on the former the obligation of existing contracts of the latter; but in the absence of legislation to that effect the old corporation remains liable for pre-existing obligations."

The sixth syllabus:

"The creation of a new municipal corporation out of a portion of territory of one already existing does not impair the obligation of existing contracts. The old municipality remains liable notwithstanding its dismemberment."

There is an averment in the answer and statement in the brief that the City of Dayton was obligated to and did provide lighting for the lots and lands in the districts set out in the petition. But there is no proof that the city carried out this obligation. On the contrary the averment is made and stipulated to be true that the plaintiff provided light to the lots and lands involved as it was required to do under the specifications of its contract. Upon this situation its debtors were the trustees of the townships wherein the lighting districts involved were located and it had the right to look to them for payment. They in turn under the statute were relegated to the necessity of securing the fund with which to pay the plaintiff by observing the provisions of §3439 GC which requires them to certify the entire costs and expenses of furnishing and maintaining such lights to the County Auditor for the purpose of placing them annually upon the tax duplicate for collection in semi-annual installments. Having done this we feel it is the obligation of the Auditor to place the assessments on the duplicate.

If it appeared that the City of Dayton had in any form paid plaintiff for the lighting of the lots and lands in the districts set out in the petition this court, of course, would not entertain this suit in mandamus though based upon an express contract to pay for the services, namely, lighting of the thoroughfares. But the record is silent on this subject and it is altogether probable that no provision whatever was made by the city for the lighting of the streets and roads under consideration and that if it is not paid for by those benefited, who were bound by the acts of the trustees, no payment will be made to nor received by the plaintiff for its full compliance with its contract.

We are also constrained to say that the city is under no specific obligation to provide lighting along the streets of all property owners. Such action is within the sound exercise of a governmental function and unless in failing to light a street the city creates a nuisance it can not be held to answer for failure so to do.

Nor do we believe that the fact that the plaintiff knew or should have known of the annexation proceedings whereby the territory involved would be transferred to the City of Dayton would require it to anticipate the result thereof on its contract and to act at its own peril in failing to negotiate and conclude a contract with the city for the lighting which it was obligated to provide and for which it was assured payment. The plaintiff, the city and the territory affected, for that matter, were under like situation respecting the knowledge with which they would be bound respecting the annexation proceedings.

If equity required an assumption of this obligation of the trustees to the plaintiff by any one it was the obligation of the city to take it over and not upon the plaintiff to negotiate a new contract.

The theory of legislation respecting an-

nexation of one political subdivision to another is that there be an adjustment of obligations due the respective subdivisions and indebtedness payable by the subdivisions when the annexation is completed. This indicates that there is to be no extinguishment of any existing indebtedness nor the contract supporting it but that the debt be recognized and taken care of by an equitable allocation.

It is argued, however, that §3564 GC ex vi termini absolves those affected by the assessment and thereby relieves the defendant from placing the assessments on the duplicate. This section is as follows:

"When the annexation of such described territory has been completed, it shall be deemed a part of the municipal corporation, and the inhabitants residing on the territory shall have all the rights and privileges of the inhabitants residing within the original limits of the corporation."

Obviously this section does not undertake to wipe out any special assessments that may have been placed against the territory involved or that were in legal process of being placed upon the tax duplicate.

The rights and privileges of the inhabitants of a city may be identical but the respective obligations of property owners in different parts of the city may materially vary. Likewise such variances will be found between owners of lots and lands annexed to a city and owners of lots and lands in the city as bounded before the annexation.

We give no consideration to the claim urged by the plaintiff that the defendant Auditor has no authority to question the placing of the assessments on the tax duplicate as this is a ministerial duty only, but determine the question as though his right to raise the question were conceded.

Finding and order granting the writ of mandamus as prayed in the petition of the plaintiff.

ALLREAD, PJ, HORNBECK and KUNKLE, JJ, concur.